1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       SOUTHERN DISTRICT OF CALIFORNIA

10

11   GRANT HEWITT BALDERREE,          )   Civil No. 11-2782-LAB(WVG)
                                       )
12                  Petitioner,        )   REPORT AND RECOMMENDATION
                                       )   DENYING PETITION FOR WRIT
13   v.                                )   OF HABEAS CORPUS
                                       )
14   F. CHAVEZ, Warden,                )
                                       )
15                  Respondent.        )
                                       )
16   _____ )

17

18                                      I

19                              INTRODUCTION

20        Grant  Hewitt  Balderree  ("Petitioner"),  a  state  prisoner

21   proceeding  pro  se,  filed  a  Petition  for  Writ  of  Habeas  Corpus

22   ("Petition"),  pursuant  to  28  U.S.C.  §  2254.  Respondent  F.  Chavez

23   ("Respondent")  filed  an  Answer  to  the  Petition  ("Answer").  Peti-

24   tioner filed a Traverse.

25        The  Court,  having  reviewed  the  Petition,  Answer,  and

26   Traverse, hereby finds that Petitioner is not entitled to the relief

27   requested  and  therefore  RECOMMENDS  that  Petitioner's  Petition  be

28   DENIED.

11cv2782

## II

### FACTUAL BACKGROUND

This statement of facts is substantially taken from the unpublished opinion of the California Court of Appeal, filed as Respondent's Lodgment No. 7.

On June 12, 2007, police sought to arrest Petitioner based on an arrest warrant for robbery from Washington State. Police believed Petitioner was inside a residence on Princeton Avenue in La Mesa, California and began the process of securing a search warrant for that residence. While the police were waiting for the warrant, Officers Sweeney, Runge, and Harman conducted undercover surveillance of the residence. Sweeney was sitting in a plain, unmarked silver sports utility vehicle ("Silver SUV") while Runge and Harman were in a plain, unmarked brown sports utility vehicle ("Brown SUV").

The officers observed a woman leave the residence and drive away in a Chrysler Sebring. Approximately five to ten minutes later, the vehicle returned. As it approached the Silver SUV, the woman driving it slowed down and stared into the Silver SUV. The woman parked and re-entered the residence. She may also have made a cellular telephone call. Sweeney assumed that he had been seen and identified as a police officer. Therefore, he departed.

Runge and Harman continued their surveillance until a man, who was not Petitioner, left the residence to walk a dog. The man passed the Brown SUV and said good morning to Runge and Harman through the open vehicle window. Runge and Harman were concerned that the man was actually checking to see if they were police officers watching the residence. Runge and Harman notified Sweeney that their position

11cv2782

had also been compromised. Sweeney radioed for marked police vehicles to set up a perimeter to contain the area until the search warrant could be obtained.

About 20 minutes later, Harman and Runge saw Petitioner leave the residence and drive down Princeton Avenue in the Sebring. Runge and Harman, in the brown SUV, began following Petitioner. Sweeney also returned to Princeton Avenue, traveling in the opposite direction. When Petitioner was about 40 or 50 feet from Sweeney, he turned his vehicle around and started heading back towards Harman and Runge. Runge, driving the Brown SUV, positioned his vehicle at an angle in an attempt to block Petitioner from driving past him. Sweeney, driving the Silver SUV that was now behind Petitioner, activated the police lights and sounded the siren.

Then, Petitioner approached the gap between the front of the Brown SUV and the side of an unoccupied parked truck and accelerated through it. In doing so, Petitioner struck both vehicles and pushed the Brown SUV out of the way.[1]

Petitioner then drove away from the scene, eluding search vehicles. Petitioner was apprehended later that evening.

---

[1]     The prosecution argued, and the jury found, that Petitioner struck the Brown SUV in a successful attempt to push it out of the way. The defense argued that Petitioner struck the Brown SUV inadvertently while trying to escape past it. Petitioner argues that his counsel presented this defense against his wishes and without investigating Petitioner's theory. Petitioner's theory was that the Brown SUV rammed him as he escaped past it. The record reveals that Petitioner raised this theory and counsel's failure to present it as early as his trial statement in mitigation. (Resp. Lodg. No. 1 at 117).
        The Court of Appeal acknowledged that counsel had not presented the ramming defense but nevertheless found that "Balderree's version of events was presented to the jury..." (Resp. Lodg. No. 13 at 2). This is inconsistent.

III

PROCEDURAL HISTORY

On June 12, 2008, a jury found Petitioner guilty of (1) assault with a deadly weapon against a police officer, (2) resisting a police officer, and (3) committing vandalism resulting in damage exceeding $400.00. (Resp. Lodg. No. 1 at 156, 400-01). On August 12, 2008, the court denied Petitioner's Motion For A New Trial and a Motion to Strike. Petitioner was sentenced to 35 years to life in prison.[2] (Resp. Lodg. No. 2 at 418-19, 421).

On September 5, 2008, Petitioner appealed his convictions to the California Court of Appeal, arguing that the evidence was insufficient to prove that he had committed felony assault on a police officer and that admission of prior high-speed chases was reversible error. (Resp. Lodg. No. 4). On August 11, 2009, the Court of Appeal affirmed his convictions. (Resp. Lodg. No. 7). On September 14, 2009, Petitioner petitioned the California Supreme Court for Review. (Resp. Lodg. No. 8). On October 22, 2009, the California Supreme Court denied his Petition for Review. (Resp. Lodg. No. 9).

On December 29, 2010, Petitioner filed a Petition for Writ of Habeas Corpus in the San Diego Superior Court. (Resp. Lodg. No. 10). Petitioner raised two claims: (1) ineffective assistance of counsel and (2) a Brady violation.[3] (Resp. Lodg. No. 10 at 11, 20). On

---

[2]    On Count 1, Petitioner was sentenced to 25 years to life under the three strikes law plus two consecutive terms of five years each for serious priors alleged as enhancements. On Count 2, Petitioner was sentenced to the same term but imposition was stayed, pursuant to California Penal Code 654.

[3]    On collateral appeal to the California Supreme Court, Petitioner added the two claims from his direct appeal. These claims were not included in Petitioner's San Diego Superior Court or California Court of Appeal collateral appeals.

1    January 14, 2011, the petition was denied by the San Diego Superior
2    Court. (Resp. Lodg. No. 11). On March 18, 2011, Petitioner filed a
3    Petition for Writ of Habeas Corpus in the California Court of
4    Appeal. (Resp. Lodg. No. 12). On April 26, 2011, the Petition was
5    denied by the California Court of Appeal. (Resp. Lodg. No. 13). On
6    May 22, 2011, Petitioner filed a Petition for Writ of Habeas Corpus
7    in the California Supreme Court. (Resp. Lodg. No. 14). On November
8    11, 2011, the Petition was denied by the California Supreme Court.
9    (Resp. Lodg. No. 15).

10        On November 28, 2011, Petitioner filed the Petition for Writ
11   of Habeas Corpus now before the Court. See Petition.

12                                   IV

13                          STANDARD OF REVIEW

14        In order for federal subject matter jurisdiction over a
15   petition for writ of habeas corpus to lie, the petition must allege
16   that the petitioner is in custody in violation of the Constitution,
17   laws, or treaties of the United States. See 28 U.S.C.A. § 2254(a).
18   In habeas corpus cases, federal courts are bound by the state's
19   interpretation of its own law. Estelle v. McGuire, 502 U.S.62, 68
20   (1991) (federal courts may not reexamine state court determinations
21   on questions of state law); Jackson v. Ylst, 921 F.2d 882, 885 (9th
22   Cir. 1990) (federal courts "have no authority to review a state's
23   application of its own laws.") Therefore, errors of state law only
24   concern a federal habeas court when those errors rise to the level
25   of a constitutional violation. See Oxborrow v. Eikenberry, 877 F.2d
26   1395, 1400 (9th Cir. 1989).

27        Under the Antiterrorism and Effective Death Penalty Act of
28   1996 ("AEDPA"), the Court may only grant a habeas petition when the
     underlying state court decision:

11cv2782

1    (1) resulted in a decision that was contrary to , or
     involved an unreasonable application of, clearly estab-
2    lished federal law, as determined by the Supreme Court of
     the United States; or (2) resulted in a decision that was
3    based on an unreasonable determination of the facts in
     light of the evidence presented in the state court
4    proceeding.

5    28 U.S.C. § 2254(d)(1) and (2).

6        A state court's decision may be found to be "contrary to"

7    clearly established Supreme Court precedent: (1) "if the state court

8    applies a rule that contradicts the governing law set forth in [the

9    Court's] cases" or (2) "if the state court confronts a set of facts

10   that are materially indistinguishable from a decision of [the] Court

11   and nevertheless arrives at a result different from the [the

12   court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-406

13   (2000); Lockyer v. Andrade, 538 U.S. 63, 72-75 (2003). A state court

14   decision involves an "unreasonable application" of clearly estab-

15   lished federal law, "if the state court identifies the correct

16   governing legal rule from this Court's cases but unreasonably

17   applies it to the facts of the particular state prisoner's case,"

18   or, "if the state court either unreasonably extends a legal

19   principle from our precedent to a new context where it should not

20   apply or unreasonably refuses to extend that principle to a new

21   context where it should apply." Williams, 529 U.S. at 407; Lockyer,

22   538 U.S. at 76.

23       When there is no reasoned decision from the state's highest

24   court, the Court "looks through" to the underlying appellate court

25   decision. Ylst v. Nunnmeaker, 501 U.S. 797, 801-06 (1991). If the

26   dispositive state court order does not "furnish a basis for its

27   reasoning," federal habeas courts must conduct an independent review

28   of the record to determine whether the state court's decision is

11cv2782

1  contrary to, or an unreasonable application of, clearly established

2  Supreme Court law. See Delgado v. Lewis, 223 F.3d 976, 982 (9th

3  Cir.2000) (overruled on other grounds by Lockyer, 538 U.S. at

4  75-76); Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).

5  However, where a state court's decision is "unaccompanied by an

6  explanation, the habeas petitioner's burden still must be met by

7  showing there was no reasonable basis for the state court to deny

8  relief." Harrington v. Richter,--- U.S. at ---, 131 S.Ct. 770, 784

9  (2011).

10                                    V

11                               DISCUSSION

12       Petitioner's Petition raises four grounds for relief: (1)

13  Ineffective Assistance of Counsel ("IAC"),(2) Brady violation when

14  prosecutors withheld video evidence, (3) Improper admission of prior

15  high speed vehicular flight from police, and (4) Insufficient

16  evidence to prove felony assault upon police.

17  A. GROUND ONE: INEFFECTIVE ASSISTANCE OF COUNSEL

18       At trial, Petitioner was represented by Daniel Cohen, a

19  private attorney who was appointed by the trial court after the

20  Public Defender's Office declared a conflict of interest and

21  withdrew from representation of Petitioner. At trial, Cohen

22  presented a defense based on the theory that Petitioner had

23  accidentally struck the Brown SUV while trying to escape. Petitioner

24  contends that Cohen failed to investigate Petitioner's claim that

25  the Brown SUV had actually rammed him while he was driving past it.

26       Petitioner raises several arguments in support of his claim

27  that Cohen was ineffective as counsel: (1) Cohen refused to discuss

28  trial strategy or tactics with Petitioner and further refused to

11cv2782

1    accept telephone calls from, or meet with, Petitioner, (2) Cohen

2    failed to investigate witnesses identified by Petitioner, (3) Cohen

3    failed to conduct any reasonable pretrial investigation, (4) Cohen

4    improperly allowed the prosecution to withhold exculpatory evidence,

5    and (5) Cohen introduced evidence that "basically admitted guilt"

6    and was "very damaging" to Petitioner's case. No deposition,

7    declaration, or other statement by Cohen is present in the record.

8         Under Strickland v. Washington, two elements are essential to

9    a successful IAC claim: deficient performance of counsel and

10   resulting prejudice. Strickland v. Washington, 466 U.S. 668, 687

11   (1984). To show deficient performance, the "person challenging a

12   conviction must show that 'counsel's representation fell below an

13   objective standard of reasonableness.'" Harrington, 131 S.Ct. 770 at

14   787 (quoting Strickland, 466 U.S. at 688). To show resulting

15   prejudice, the person must show "a reasonable probability that, but

16   for counsel's unprofessional errors, the result of the proceeding

17   would have been different. A reasonable probability is a probability

18   sufficient to undermine confidence in the outcome." Strickland, 466

19   U.S. at 694. The reviewing standards set forth by Strickland and

20   AEDPA are both "highly deferential." Id. at 689. Consequently, when

21   both are in operation, review is doubly so. Knowles v. Mirzayance,

22   556 U.S. 111, 123 (2009).

23        1. Refusal to Discuss Trial Tactics or Meet With Petitioner

24        The California Court of Appeal summarized this portion of

25   Petitioner's IAC claim but did not directly address it. (Resp. Lodg.

26   No. 13 at 1). The Court therefore looks through to the Superior

27   Court's opinion. See Ylst, 501 U.S. at 801-06. Here, the Superior

28   Court's opinion cites a California case for the proposition that

11cv2782

1   "the number of times [a defendant] sees his attorney ... does not

2   establish incompetence." (Resp. Lodg. No. 11 at 3). Respondent

3   identifies no equivalent federal authority to support that proposi-

4   tion.[4]

5        In the case cited by the Superior Court, the fact that a

6   defendant only met with appointed counsel once did not establish

7   incompetence. See People v. Silva, 45 Cal. 3d 604, 622 (1988). Here,

8   the Superior Court concluded that Silva was applicable because

9   "Petitioner has not shown ... what prejudice he suffered by not

10  having additional meetings with defense counsel." (Resp. Lodg. No.

11  11 at 3, emphasis added). Therefore, it appears that the Superior

12  Court believed that Petitioner and Cohen met at least once. However,

13  Petitioner alleges that Cohen never met with him to discuss the

14  case.[5]

15       Under federal case law, counsel is not necessarily ineffec-

16  tive merely because counsel failed to meet with a client in jail.

17  Anderson v. Calderon, 232 F.3d 1053, 1085-86 (9th Cir. 2000)

18  (counsel who met defendant for the first time at trial but communi-

19  cated daily thereafter and had previously discussed the case with

20  investigators and experts was not ineffective) [overruled on other

21  grounds, Osband v. Woodford, 290 F.3d 1036, 1043 (9th Cir. 2002)].

22  Here, Petitioner contends that Cohen did not meet with him before

23  trial (except to encourage Petitioner to plea bargain). However,

24  Petitioner claims to have "made counsel aware on numerous occasions

25

26  _____

    [4]    With regard to Petitioner's IAC claims, Respondent's argument is simply a

27  summary of the state courts' opinions. See Answer at 5-6.

    [5]    Petitioner claims that Cohen's contact with him was limited to five minutes

28  before pre-trial hearings. Petitioner contends that these limited meetings were
    used only to pressure Petitioner to accept plea agreements. Nothing in the record
    contradicts Petitioner's allegations.

11cv2782

1   of the existence of the witness Nancy Lattman, and the importance of

2   her testimony." Petition at 14. Therefore, it is reasonable to

3   assume that Cohen and Petitioner communicated about the case at some

4   point before the conclusion of the trial.

5   Given the doubly-deferential standard of review established

6   by Strickland and AEDPA, the facts here do not show an unreasonable

7   application of Supreme Court precedent. Although meetings and trial

8   discussions with a client are desirable, it would not have been

9   unreasonable for the Superior Court to find that Cohen's performance

10  was within the "wide range" of reasonable professional assistance

11  contemplated by the Supreme Court, despite his alleged failure to

12  meet and discuss.[6] See Harrington, 131 S.Ct. at 778. Furthermore,

13  the Superior Court's implicit finding (that Cohen had met with

14  Petitioner at least once) was not an unreasonable determination of

15  the facts in light of the evidence because Petitioner admitted that

16  Cohen had met with him for five minutes before pre-trial hearings.

17  Consequently, Petitioner has not shown that the Superior

18  Court erred when it determined that Cohen's alleged failure to meet

19  or discuss trial tactics with Petitioner did not constitute IAC.

20  <u>2. Failure to Interview Witnesses Identified by Petitioner</u>

21  The California Court of Appeal did not summarize nor address

22  this issue. (Resp. Lodg. No. 13 at 1). Therefore, the Court looks

23  through to the Superior Court's opinion. See Ylst, 501 U.S. at 801-

24  06. The Superior Court cites a California case for the proposition

25  that the California Supreme Court "has never required counsel to

26

27  [6]   The Superior Court did not explicitly make this finding. However, where a

28  state court does not explain its reasoning for its decision as to an element of
    a multipart claim, a reviewing federal court must consider whether there was any
    possible reasonable basis for the state court's decision. See Harrington, 131
    S.Ct. at 784.

11cv2782

1  investigate all prospective witnesses." (Resp. Lodg. No. 11 at 4).

2  Respondent identifies no equivalent federal authority to support

3  that proposition.

4       The Superior Court determined that Petitioner had not shown

5  prejudice because he had failed to identify which witnesses Cohen

6  failed to call to testify and because he had not submitted declara-

7  tions establishing what their testimony would have been. (Resp.

8  Lodg. No. 11 at 4). However, Petitioner did identify his girlfriend,

9  Nancy Lattman, as an eyewitness to the incident and argued that

10  Cohen did not interview Lattman despite Petitioner's request that he

11  do so. (Resp. Lodg. No. 10 at 11).

12       Furthermore, when Petitioner appealed to the Court of Appeal,

13  he included a declaration from Lattman that established what her

14  testimony would have been. (Resp. Lodg. No. 12 at 12; Resp. Lodg.

15  No. 14 at Exh. D). Lattman declared that she was an eyewitness and

16  would have testified that Petitioner's vehicle was rammed by the

17  Brown SUV. (Resp. Lodg. No. 14 at Exh. D) Lattman was never

18  interviewed by Cohen nor did he ask her to testify.[7] Id.

19       Lattman's declaration was first presented to the California

20  Court of Appeal in a Petition for Writ of Habeas Corpus. The opinion

21  of that court makes no mention of the declaration. Therefore, on

22  this issue, there is no reasoned opinion from any court and this

23  Court therefore conducts an independent review. See Delgado, 223

24  F.3d at 981-82.

25       Here, the question is whether Cohen was ineffective as

26  counsel when he failed to interview an eyewitness whose testimony

27

28  [7]    Mark Kirkness, the public defender initially assigned to Petitioner's case,
did interview Lattman prior to his withdrawal from the case. (Resp. Lodg. No. 14
at Exh. D).

11

1  would have supported a "ramming" defense and instead elected to

2  present an "inadvertent strike" defense. It is virtually certain

3  that, if Cohen had investigated both possible defenses, an election

4  to pursue one instead of the other would not constitute IAC. See

5  Strickland, 466 U.S. at 690-91 ("strategic choices made after

6  thorough investigation of law and facts relevant to plausible

7  options are virtually unchallengeable"). However, there is no

8  evidence that Cohen investigated the "ramming" defense at all.

9  Furthermore, it is possible that Cohen never even knew that a

10 "ramming" defense existed due to his alleged failure to meet or

11 discuss the case with Petitioner.[8/]

12       Under federal case law, a "defense attorney's failure to

13 consider alternative defenses constitutes deficient performance when

14 the attorney 'neither conduct[s] a reasonable investigation nor

15 ma[kes] a showing of strategic reasons for failing to do so.'" Rios

16 v. Rocha, 299 F.3d 796, 805-06 (9th Cir. 2002). As a result, it

17 appears that Cohen's performance fell below an objectively reason-

18 able standard. See Strickland, 466 U.S. at 691 ("counsel has a duty

19 to make reasonable investigations or to make a reasonable decision

20 that makes particular investigations unnecessary.") Cohen's failure

21 to consult Petitioner about possible defenses satisfies the first

22 prong of Strickland. See Florida v. Nixon, 543 U.S. 175, 187 (2004)

23 ("An attorney undoubtedly has a duty to consult with the client

24

25

26

27

28

---

[8/]     Kirkness was aware of the "ramming" defense and interviewed Lattman. However, Kirkness withdrew from the case when his office declared a conflict of interest. Kirkness states that the results of his investigation were handed over to the Alternate Public Defender ("APD"). Furthermore, he states that he is "sure [the APD] gave them to attorney Cohen." (Resp. Lodg. No. 14 at Exh. E). However, there is no evidence in the record that Cohen received these documents or reviewed them.

11cv2782

1   regarding 'important decisions,' including questions of overarching
2   defense strategy.")

3       The second prong of <u>Strickland</u> requires that Petitioner show
4   resulting prejudice. <u>Id.</u> at 691-92. Specifically, Petitioner "must
5   show that there is a reasonable probability that, but for counsel's
6   unprofessional errors, the result of the proceeding would have been
7   different. A reasonable probability is a probability sufficient to
8   undermine confidence in the outcome." <u>Id.</u> at 694. In <u>Johnson v.</u>
9   <u>Baldwin</u>, the Ninth Circuit found prejudice when counsel failed to do
10  even 'minimal investigation' such as interviewing alibi witnesses or
11  investigate corroboration and the prosecution's case was so weak
12  that even minimal investigation could have led to a trial strategy
13  that would have prevented the jury from deciding to convict. <u>Johnson</u>
14  <u>v. Baldwin</u>, 114 F.3d 835, 840 (9th Cir. 1999).

15      Here, in contrast, the prosecution's case was strong. The
16  jury found that Petitioner had hit the Brown SUV intentionally in an
17  attempt to escape. Even if the "ramming" defense had been raised
18  instead of the "inadvertent strike" defense, the jury would still
19  have heard from the witnesses they ultimately found believable: the
20  three police officers whose testimony supported the prosecution's
21  theory of an intentional assault by Petitioner.

22      Petitioner suggests that his case parallels <u>Larsen v. Adams</u>,
23  718 F. Supp. 2d 1201 (C.D. Cal. 2010). In that case, trial counsel's
24  failure to interview a percipient witness was ineffective and
25  prejudicial because the interview would have revealed another
26  witness, James McNutt, whose testimony would have contradicted the
27  prosecution's theory of events. <u>Larsen</u>, 718 F. Supp. 2d at 1225.
28  However, in that case, the credibility of the witness was much

11cv2782

1   higher than here.   There, McNutt was a retired police chief and

2   combat veteran who was then working as a correctional officer. Id.

3   at 1211. Here, there is nothing in the record suggesting that

4   Lattman had training or experience to more accurately observe

5   stressful situations. Furthermore, in Larsen, McNutt had only a

6   tenuous connection to the defendant.[9/] Here, in contrast, Lattman was

7   Petitioner's girlfriend. Accordingly, it is reasonable to assume

8   that a jury would find Lattman significantly less credible than the

9   jury in Larsen might have found McNutt.

10          Finally, even if Lattman had been called to testify, the jury

11   would still have heard propensity evidence about the two prior

12   incidents where Petitioner attempted to avoid arrest through high-

13   speed vehicular chases. See infra at 20-21.

14          Therefore, while there is a remote possibility that the

15   result of the proceeding would have differed, Petitioner has not

16   shown that it rose to a "reasonable probability" in light of the

17   totality of evidence presented at trial. See id. at 693-94. ("It is

18   not enough for the defendant to show that the errors had some

19   conceivable effect on the outcome of the proceeding.")[10/]

20          Cohen's failure to discuss the case with Petitioner resulted

21   in Cohen being unaware of the possibility of a "ramming" defense. As

22   a result, Cohen failed to investigate the viability of that defense.

23   These failures indicate that his performance as counsel fell below

24   an objective standard of reasonableness. However, it is not

25

26

27   [9/]     Specifically, McNutt intended to meet Daniel Harrison, his stepson, to
     celebrate a birthday. McNutt's wife testified that Harrison and the defendant
     seemed to know each other but she did not think they were friends. Larsen, 718 F.
28   Supp. 2d at 1211-14.

     [10/]    However, "a defendant need not show that counsel's deficient conduct more
     likely than not altered the outcome in the case." Strickland, 466 U.S. at 693.
                                                                        11cv2782

1   reasonably probable that the outcome of the case would have been

2   different but for these failures.

3           Consequently, Cohen's failure to discuss the case with

4   Petitioner or failure to interview Lattman did not result in

5   prejudice sufficient to meet Strickland's prejudice test for IAC.

6           3. Cohen Failed to Conduct Any Reasonable Pretrial
            Investigation

7           The California Court of Appeal and the Superior Court both

8   summarized this portion of Petitioner's IAC claim but did not

9   directly address it. (Resp. Lodg. Nos. 13 at 1, 11 at 3). Therefore,

10  this Court must consider whether the prior courts could have had any

11  reasonable basis for their decision. See Harrington, 131 S.Ct. at

12  784 (where a state court does not explain its reasoning for its

13  decision as to an element of a multipart claim, a reviewing federal

14  court must consider whether there was any possible reasonable basis

15  for the state court's decision).

16          Petitioner's argument in this regard is that Cohen failed to

17  conduct any independent investigation and relied entirely on police

18  reports, police statements, and police photographs. See Petition at

19  16. The U.S. Supreme Court has recognized that counsel has a duty to

20  make reasonable investigations or to make a reasonable decision that

21  further investigations are unnecessary. Wiggins v. Smith, 539 U.S.

22  510, 521 (2003). Furthermore, counsel's examination of the facts and

23  circumstances should be independent. Strickland, 466 U.S. at 680.

24  However, Petitioner does not identify any case suggesting that an

25  investigation must itself be independent to satisfy this require-

26  ment. In any event, counsel's decision not to investigate should be

27  considered with "a heavy measure of deference to counsel's judg-

28  ments." Id. at 691. The Supreme Court has recognized that "[t]here

11cv2782

1   comes a point where a defense attorney will reasonably decide that

2   another strategy is in order, thus making particular investigations

3   unnecessary" and that decision is due a heavy measure of deference.

4   Cullen v. Pinholster, 563 U.S. ----, 131 S.Ct. 1388, 1407-08 (2011).

5   It was reasonable for the Superior and appellate courts to determine

6   that Cohen's failure to independently investigate did not render him

7   ineffective.

8          Consequently, Petitioner has not shown that Cohen's alleged

9   reliance on documents produced by the police constituted IAC.

10         4. Cohen Improperly Allowed the Prosecution To Withhold
            Exculpatory Evidence in the Form of A Video of the Incident
11         The Court of Appeal summarized and addressed this issue.

12  (Resp. Lodg. No. 13 at 1-2). Petitioner argued that Cohen was

13  ineffective because he did not obtain video evidence from the marked

14  police cars that were present during the events that led to

15  Petitioner's arrest. The Court of Appeal found that Petitioner

16  "concede[d] counsel made a discovery request and was told there were

17  no videotapes." (Resp. Lodg. No. 13 at 2). However, it appears that

18  the Court of Appeal misread the Petition. Petitioner stated that

19  "Cohen made an informal request for video [evidence] from the

20  prosecutor, who told him that no such video [evidence] exists

21  because unmarked [vehicular] units do not have video capability."

22  (Resp. Lodg. No. 12 at 17, emphasis added). The record presented to

23  the Court is unclear whether Cohen ever asked for video evidence

24  from the marked police cars that were present or whether Cohen ever

25  made a formal discovery request.

26         Nevertheless, there is no evidence in the record to support

27  Petitioner's conclusory claim that "it is common knowledge that all

28  black and white patrol units in La Mesa are equipped with video

11cv2782

devices." See Petition at 20. Even if such police cars are equipped with video cameras, there is no evidence in the record that they were active and recorded the events of the car chase and collision. The Superior Court determined that "Petitioner's allegations [in this regard] are conclusory and thus fail to state a prima facie claim for relief." Given the lack of supporting evidence, this determination was reasonable. On appeal, Petitioner did not provide new supporting evidence for this claim.

Consequently, Petitioner has not shown that Cohen was ineffective for failing to obtain videotapes of the events of this case because there is no evidence that such videotapes existed.

### 5. Cohen Introduced Damaging Evidence

The California Court of Appeal did not summarize or address this issue. (Resp. Lodg. No. 13 at 1). The Court therefore looks through to the Superior Court's opinion. See Ylst, 501 U.S. at 801-06. At trial, Cohen showed a computer simulation of the collision produced by Ronald P. Carr, an expert accident reconstructionist retained for this purpose. See Petition at 22-23; (Resp. Lodg. No. 14 at Exh. B). This simulation was largely based on documents produced by the prosecution. See Petition at 22; (Resp. Lodg. No. 14 at Exh. B). The simulation relied upon the assumption that the Brown SUV was stationary. (Resp. Lodg. No. 2 at 287). Carr did not visit the scene, conduct interviews, or inspect the vehicles involved in the collision. (Resp. Lodg. No. 14 at Exh. B).

Petitioner contends that the simulation supported the prosecution's theory of the collision and that Carr's testimony was "one hundred percent for the prosecution." Petition at 23. The Superior Court found that the simulation was not contrary to the

11cv2782

1    defense raised at trial. This Court has previously determined that
2    Cohen's decision to present a defense based on the inadvertent
3    strike theory did not cause prejudice. Therefore, the Superior
4    Court's determination was reasonable because the simulation
5    supported a meritorious defense, albeit not the defense Petitioner
6    wished to present.

7          Furthermore, the fact that some of Carr's statements on the
8    witness stand supported the prosecution's case is not proof of IAC.
9    Witnesses are sworn to tell the whole truth, and nothing but the
10   truth. A witness is not sworn to selectively tell only those parts
11   of the truth that support the party calling him or her to the stand.
12   Therefore, counsel is not ineffective simply because some of the
13   testimony provided by a witness is damaging to counsel's client. If
14   it were otherwise, calling any defense witness to the stand could
15   result in a retrial due to prejudice.

16         Consequently, Petitioner has not shown that Cohen was
17   ineffective for placing Carr on the stand or for using Carr's
18   simulation in support of the inadvertent strike defense.

19         For the reasons set forth above, Petitioner has not shown
20   that Cohen's performance as counsel was both ineffective and caused
21   prejudice. Accordingly, the Court RECOMMENDS that Petitioner's first
22   ground for relief be DENIED.

23   B. GROUND TWO: BRADY VIOLATION

24         Petitioner contends that the prosecution committed a Brady
25   violation by suppressing evidence in the form of video footage from
26   the marked police cars present during the collision. See Brady v.
27   Maryland, 373 U.S. 83 (1962). The rule established by Brady is that
28   "suppression by the prosecution of evidence favorable to an accused

11cv2782

1    upon request violates due process where the evidence is material
2    either to guilt or to punishment" Id. at 87.

3        The Court notes that Petitioner's Brady claim is dependent
4    upon the failure of Petitioner's IAC claim. In that claim, Peti-
5    tioner argued that Cohen was ineffective for failing to request
6    video evidence via the discovery process. Conversely, Brady seems to
7    require a finding that counsel actually requested the evidence at
8    issue. Compare U.S. v. Agurs, 427 U.S. 97, 114 (1976) (no Brady
9    violation where evidence allegedly suppressed was not actually
10   requested and the evidence was not sufficiently exculpatory) with
11   Smith v. Cain, --- U.S. ----, 132 S.Ct. 627, 630 (2012) (failure to
12   voluntarily disclose evidence that would undermine sole prosecution
13   witness's credibility was a Brady violation.)

14       In any event, the materiality test set forth in Agurs is not
15   germane here because there is no indication that the evidence
16   Petitioner claims was withheld even existed. Petitioner's claim that
17   "it is common knowledge that all black and white patrol units in La
18   Mesa are equipped with video devices" lacks factual substantiation.
19   See Petition at 20. Furthermore, even assuming that the police cars
20   were equipped with video cameras, there is still no evidence in the
21   record that the cameras were turned on. Therefore, the Superior
22   Court's determination that "Petitioner's unsubstantiated claim that
23   such evidence exists is insufficient to support" the Petition was a
24   reasonable determination of the facts in light of the evidence and
25   was not an unreasonable application of Supreme Court precedent.
26   (Resp. Lodg. No. 11 at 5); see 28 U.S.C. § 2254(d).

27       Accordingly, the Court RECOMMENDS that Petitioner's second
28   ground for relief be DENIED.

11cv2782

C. GROUND THREE: EVIDENCE OF PRIOR BAD ACTS IMPROPERLY ADMITTED

Petitioner argues that evidence of two prior high-speed vehicular police chases in which he had been involved were admitted at trial in violation of his due process rights.[11] The trial court, relying on Cal. Evid. Code § 1101, ruled that the evidence could be admitted because it tended to prove that the collision with the Brown SUV was not a mistake, that Petitioner wanted to escape, and that Petitioner had prior knowledge of how police officers conduct a vehicular pursuit. On direct appeal, the California Court of Appeal affirmed, finding that this evidence showed Petitioner previously "[went] to great lengths to flee from the police rather than be arrested" and that this "buttressed the prosecution's claim that [Petitioner] intentionally chose to force his vehicle through the gap [created] by hitting the [Brown] SUV." (Resp. Lodg. No. 7 at 14).

Respondent argues that Petitioner raises no federal question in this regard. Respondent points to Alberni v. McDaniel, in which the Ninth Circuit noted the absence of Supreme Court precedent on the issue of propensity evidence. See Alberni v. McDaniel, 458 F.3d 860, 863-67 (9th Cir. 2006); Duvardo v. Giurbino, 410 Fed. Appx. 69, 70 (9th Cir. 2011); see also Estelle, 502 U.S. at fn.5 (the Supreme Court "express[es] no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.") Therefore,

---

[11]/    The first chase occurred in July 1987, when Petitioner was stopped by police while he was driving a stolen Winnebago, accelerated away from the officer who stopped him, and eventually resorted to flight on foot when the Winnebago came to rest. The second chase occurred in April 2000, when police sought to arrest Petitioner and he fled in a truck on city streets at speeds up to 70 miles per hour. Again, Petitioner attempted to escape on foot when the truck became lodged in an embankment.

11cv2782

the California courts could not have reached a decision contrary to Supreme Court precedent because no precedent exists. See 28 U.S.C. § 2254(d)(1). Neither could they have misapplied Supreme Court precedent. Id. Finally, the Court of Appeal's determination of the facts in this regard is not unreasonable given the evidence presented. See 28 U.S.C. § 2254(d)(2). Consequently, AEDPA forestalls granting a writ of habeas corpus.

Accordingly, the Court RECOMMENDS that Petitioner's third ground for relief be DENIED.

D. GROUND FOUR: INSUFFICIENT EVIDENCE OF FELONY ASSAULT

Petitioner contends that there was insufficient evidence to convict him of felony assault upon a police officer, and the conviction was therefore a violation of his right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments. Specifically, Petitioner raises two insufficiency of evidence claims: (1) the evidence does not show that the collision was intentional and (2) the evidence does not show that he knew, or should have known, that the Brown SUV was occupied by police officers.

1. Collision Was Not Intentional

Petitioner argues that, under California case law, a driver is guilty of felony assault if he uses the car as an instrument of violence against another person but is not guilty of felony assault when he merely drives recklessly and consequently causes a vehicle collision. Petition at 42. Petitioner asserts that he recklessly, but not intentionally, caused contact between his vehicle and the Brown SUV. Id. at 43. Further, he argues that he veered away from the occupied Brown SUV to minimize the impact damage (albeit to keep his car moving towards his goal of escaping police). Id.

On direct appeal, the Court of Appeal noted that the requisite elements of assault under California law are that the defendant "intentionally perform an act with actual knowledge of the facts that would lead a reasonable person to realize that the act by its nature will probably and directly result in the application of physical force against another." (Resp. Lodg. No. 7 at 7 [citing People v. Williams, 26 Cal. 4th 779, 788, 790 (2001)]). Notably, "the defendant need not have an intent to injure..." Id. Here, the jury found that Petitioner's attempted escape fit within these elements. Furthermore, the Court of Appeal found that there "was sufficient evidentiary support for the jury to conclude that at the time [Petitioner] accelerated through the gap, he knew his path was blocked and that he would cause a collision." Id. at 8. This support came in the form of Runge's testimony that he had stopped moving the Brown SUV at the time of the collision. Id.

The Court of Appeal's determination of the facts was reasonable, in light of the evidence presented. See 28 U.S.C. § 2254(d)(2). Furthermore, the Court of Appeal's determination was neither contrary to, nor a misapplication of Supreme Court precedent. See 28 U.S.C. § 2254(d)(1); Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (determining whether sufficient evidence supports a conviction requires a review of the entire record in the light most favorable to the conviction to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.")

To the extent that Petitioner challenges the state court's interpretation and application of state law, federal courts have no authority to review those decisions. Estelle, 502 U.S. at 67-68 ("it

11cv2782

1  is not the  province of a federal habeas court to reexamine

2  state-court determinations on state-law questions.")

3         2. Evidence Does Not Prove Petitioner Knew or Should Have
           Known that the Brown SUV Was Occupied by Police Officers

4         Petitioner argues that he did not know that the Brown SUV was

5  occupied by police officers. The statute at issue, Cal. Pen. Code

6  245(c), requires proof that a defendant "knows or reasonably should

7  know that the victim is a peace officer." Petitioner asserts that,

8  although he may have been aware that the occupants of the Silver SUV

9  were police officers, there was no evidence suggesting that he knew

10  the occupants of the Brown SUV were also police officers.

11         However, the Court of Appeal held that the jury determination

12  was reasonable. Specifically, the evidence at trial showed that

13  Petitioner was wanted for robbery in Washington State and encoun-

14  tered two SUVs when he tried to leave the residence. The Silver SUV

15  had flashing lights and a siren activated while the Brown SUV was

16  "positioned at an angle in the middle of the road to prevent

17  [Petitioner] from moving his car forward." Id. at 10. The Court of

18  Appeal found that it was reasonable for the jury, confronted with

19  this evidence, to infer that Petitioner knew or should have known

20  that the occupants of the Brown SUV were police officers. Id.

21         The Court of Appeal's determination of the facts was

22  reasonable, in light of the record. See 28 U.S.C. § 2254(d)(2).

23  Furthermore, the Court of Appeal's determination was neither

24  contrary to, nor a misapplication of Supreme Court precedent. See 28

25  U.S.C. § 2254(d)(1); Jackson v. Virginia, 443 U.S. at 318-19

26         AEDPA bars this Court from granting a writ of habeas corpus

27  in the absence of an unreasonable determination of the facts or a

28  state court decision that is contrary to, or a misapplication of,

11cv2782

1   Supreme Court precedent. <u>See</u> 28 U.S.C. § 2254(d). For the reasons

2   set forth above, Petitioner's insufficiency of the evidence claims

3   have not met this hurdle and thus no writ of habeas corpus may

4   issue.

5          Accordingly, the Court RECOMMENDS that Petitioner's fourth

6   ground for relief be DENIED.

7          Since the Court has recommended that all of the grounds for

8   relief Petitioner has raised be denied, the Court further RECOMMENDS

9   that the Petition be DENIED.

10                                  VI

11                          <u>RECOMMENDATION</u>

12         After a review of the record in this matter, the undersigned

13  Magistrate Judge RECOMMENDS that the Petition for Writ of Habeas

14  Corpus be DENIED.

15         This Report and Recommendation of the undersigned Magistrate

16  Judge is submitted to the United States District Judge assigned to

17  this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

18         **IT IS ORDERED** that no later than <u>April 23, 2012</u>, any party to

19  this action may file written objections with the Court and serve a

20  copy on all parties. The document should be captioned "Objections to

21  Report and Recommendation."

22         **IT IS FURTHER ORDERED** that any reply to the objections shall

23  be filed with the court and served on all parties no later than

24  <u>May 7, 2012</u>, the parties are advised that failure to file objections

25

26

27

28

11cv2782

1  within the specified time may waive the right to raise those

2  objections on appeal of the Court's order. <u>Martinez v. Ylst</u>, 951

3  F.2d 1153 (9th Cir. 1991).

4

5

6  DATED:   April 2, 2012

7

8  _____
   Hon. William V. Gallo
9  U.S. Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11cv2782